2011 OK 106

**Sheila Yvonne BERMAN,
Plaintiff/Appellant,**

v.

**LABORATORY CORPORATION OF
AMERICA d/b/a Lab Corp, Inc.,
Defendant/Appellee.**

No. 107999.

Supreme Court of Oklahoma.

Dec. 20, 2011.

Phillip P. Owens, II, Edmond, Oklahoma, for Appellant.

Matthew L. Standard, Oklahoma City, Oklahoma, for Appellee.

### OPINION

WATT, Justice:

### PROCEDURAL BACKGROUND

¶ 1 Plaintiff/Appellant Sheila Yvonne Berman sought assistance from the Oklahoma

Department of Human Services (DHS), to determine paternity and to collect child support. She alleged Herbert White, Jr. was the father of her child. DHS brought an administrative action to determine paternity and arranged for Defendant/Appellee Laboratory Corporation of America d/b/a Lab Corp, Inc. (LabCorp) to conduct the DNA test. LabCorp reported White was not the father of Berman's child. The test was performed a second time with similar results.

¶ 2 After the DHS proceeding concluded, Berman submitted an envelope, purportedly containing White's DNA, to a different lab for DNA testing. This time the results were different, showing the DNA sample tested was that of the father of Berman's child. On September 20, 2006, Berman filed a paternity action in the District Court of Grady County against White. He was ordered to submit to another paternity test. The test results dated August 30, 2007, were virtually identical to the DNA sample contained on the envelope, and White was judicially determined to be the father of Berman's child on June 4, 2008. White appealed, and on June 19, 2009, the Court of Civil Appeals (COCA) affirmed the trial court in case number 105,961. White did not request certiorari review in this Court, and the mandate issued on July 23, 2009.

¶ 3 While the Grady County case was still pending, Berman filed this lawsuit on April 9, 2008, in the District Court of Oklahoma County, seeking money damages from Lab-Corp for the negligent testing of White's DNA sample in the DHS administrative proceeding. In her amended petition, Berman alleged, in part:

4. [T]he results of Test No. 1 indicated that White was not the biological father of Plaintiff's child. However, Defendant reported the wrong identifica-

tion number for White with the results of Test No. 1.

5. [T]he results of Test No. 2 indicated again that White was not the biological father of Plaintiff's child. For Test No. 2, Defendant reported the correct identification number for White. However, Defendant used the same male DNA sample in both tests.

6. [I]n Test No. 1, Defendant negligently reported an incorrect identification number for White, which in turn, correlated to an incorrect DNA sample taken from another person. Due to Defendant's negligence, the results of Test No. 1 were incorrect.

7. [I]n Test No. 2, although Defendant reported the correct identification number for White, Defendant negligently used the same incorrect DNA sample used for Test No. 1. A different DNA sample, corresponding with White's correct identification number, should have been used in Test No. 2. Due to Defendant's negligence, the results of Test No. 2 were likewise incorrect.

¶ 4 Berman alleged that as a result of LabCorp's negligence, she suffered damages in excess of $10,000.00 for the "loss of past and future child support payments that White would have been required to pay, had the paternity test results been correct, showing White to be the biological father of Plaintiff's child." Berman alleged LabCorp had the duty of care of a "reasonably prudent professional in the paternity testing field" and that its actions constitute a breach of that duty.

¶ 5 LabCorp raised the affirmative defense that its conduct "may be absolutely and/or qualifiedly privileged" pursuant to 12 O.S. 2001 § 1443.1.[1] LabCorp later filed its mo-

---

1. 12 O.S.2001 § 1443.1 provides:

A. A privileged publication or communication is one made:
First. In any legislative or judicial proceeding or any other proceeding authorized by law;
Second. In the proper discharge of an official duty;
Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof,

and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.
B. No publication which under this section would be privileged shall be punishable as libel.

tion for summary judgment which the trial court granted on January 11, 2010,[2] relying on *Hartley v. Williamson,* 2001 OK CIV APP 6, 18 P.3d 355 (released for publication by Order of the Supreme Court).[3] Berman appealed, and on March 2, 2011, COCA affirmed the trial court on the basis of privilege, stating at ¶ 7 of its opinion:

> In *Kirschstein v. Haynes,* 1990 OK 8, 788 P.2d 941, the Supreme Court confirmed that a publication or communication made during a proceeding authorized by law was privileged pursuant to 12 O.S.2001 § 1443.1 from an action for libel or slander. *Kirschstein* extended the 'litigation privilege' recognized at common law to communications made prior to judicial or quasi-judicial proceedings if the statement had some relation to the proposed proceeding. In addition, *Kirschstein* holds that, if applicable, the privilege not only bars defamation claims but also claims for intentional infliction of emotional distress based on the same communication. *Id.* at ¶ 30, 788 P.2d at 954. **Claims for negligence are barred as well.** [emphasis added]. *See Hartley v. Williamson,* 2001 OK CIV APP 6, ¶ 15, 18 P.3d 355, 358 (approved for publication by the Supreme Court).

¶ 6 We granted certiorari on June 22, 2011.

## ISSUE PRESENTED

¶ 7 COCA declared the dispositive issue in this case to be:

> The dispositive issue in this appeal is whether an administrative proceeding conducted by DHS to determine paternity is a quasi-judicial proceeding. If so, then well-established case law extends a privilege to evidence offered during that proceeding and provides immunity to LabCorp from Berman's suit. **However, the nature of the paternity proceeding has not been previously determined.** [emphasis added.]

¶ 8 COCA found the DHS proceeding, conducted pursuant to 10 O.S.2001 § 89 to determine paternity, was a quasi-judicial proceeding authorized by law and that the evidence and communications of witnesses made during the proceeding were therefore privileged. Further, COCA held that even if LabCorp's test results were incorrect, they could not be the basis for a negligence claim by Berman, citing *Pacific Employers Ins. Co. v. Adams,* 1946 OK 86, ¶ 10, 168 P.2d 105, 106–07, 196 Okla. 597. Thus, according to COCA, a determination that the DHS proceeding was "quasi-judicial" in nature required a ruling that the privilege applied and summary judgment was properly granted.

¶ 9 We hold, however, that the privilege allowed by 12 O.S.2001 § 1443.1 is inapplicable to this case, and *Kirschstein,* supra, and *Hartley,* supra, are distinguishable under the facts. The issue in this case is whether LabCorp owed Berman a duty of care. If so, Berman stated a claim for negligence against LabCorp, unrelated to the publication of the lab results. We hold the trial court erred in granting summary judgment, and we reverse and remand this case to the trial court for trial.

---

2. The order provides, in part:
   [T]he Court finds that undisputed material facts demonstrate that Defendant's conduct in this matter is not actionable because of the absolute litigation privilege. The Court was primarily persuaded by *Hartley v. Williamson,* 2001 OK CIV APP 6, 18 P.3d 355 (released for publication by Order of the Supreme Court). The Court did not reach the merits of Defendant's other arguments in favor of summary judgment because the Court's ruling disposes of the entire case.

3. In *Hartley,* a psychologist agreed to act as a court-authorized counselor in a custody dispute. The doctor testified that she believed, based on evidence she was shown, that the mother planned to flee the jurisdiction with her children before the court's ruling. She recommended that custody be given to the father. Because of her testimony, the mother sued the doctor for negligence, intentional infliction of emotional distress, deceit and conspiracy to commit abuse of process. The trial court granted the doctor's motion for summary judgment, finding her prior testimony to be immune from liability because of her status as a court-appointed expert. Relying on *Kirschstein v. Haynes,* supra, COCA held the immunity granted in defamation cases also applied to Mother's other claims because they arose from the same circumstances as a defamation claim and were "all founded on Doctor's testimony at a judicial proceeding." *Hartley,* 18 P.3d at 358.

## DISCUSSION

¶ 10 In *Kirschstein v. Haynes*, supra, we held, as a matter of first impression, that the absolute privilege which applied to communications which were made **during** a judicial proceeding also applied to those made **preliminary to** a proposed proceeding for defamation. This privilege was further extended in *Kirschstein* to bar the plaintiff's claim of intentional infliction of emotional distress because it was based on the same facts as the defamation claim. Relying on *Kirschstein*, COCA held in this case that the privilege under § 1443.1 also extends to Berman's negligence claim because the communication was made in the context of a "quasi-judicial" proceeding. However, the facts of this case are insufficient to invoke the privilege under § 1443.1.

¶ 11 In *Kirschstein* we clearly expressed the parameters of the § 1443.1 privilege and its application to the other claims raised therein:

[T]he absolute privilege acts not only to bar **defamation actions,** but those for intentional infliction of emotional distress **when based on the same factual allegations as the defamation claim.** 788 P.2d at 945 [emphasis added].

. . .

Thus, when the claim for intentional infliction of emotional distress is based on the same factual underpinnings **as a defamation claim for which the privilege applies,** a claim for intentional infliction of emotional distress is also barred by the reach of the absolute privilege. 788 P.2d at 954 [emphasis added].

¶ 12 While *Kirschstein* allows a defendant to raise the defense of the absolute privilege under 12 O.S. § 1443.1 when sued for defamation, the present case does not involve a claim for, or raise allegations of, defamation.[4] Berman sued LabCorp for negligence.

¶ 13 In *Hartley v. Williamson*, supra, a different COCA division held that the claims raised against the doctor by the plaintiff Mother, i.e., negligence, intentional infliction of emotional distress, deceit, and conspiracy to commit abuse of process, were based on what the doctor "testified" upon her review of the evidence. In *Kirschstein*, the intentional infliction claim arose from the same circumstances as the defamation claim, i.e., a doctor's affidavit that the plaintiff gave birth to the appellant. In the present case, Berman's claims are based on allegations of LabCorp's negligence in **performing the DNA tests,** not on its negligent report of the results.

¶ 14 The communications in the preceding cases were determined to be privileged and to bar the plaintiffs' other claims because the claims were based on the relevant evidence[5] from each case, i.e., the "same factual allegations" or the "same factual underpinnings" as the defamation claim. In this case, however, we cannot hold the communication was based on the evidence which is relevant to this case, i.e., the paternity and DNA sample of **Herbert White.** LabCorp tested **the DNA of a completely different man** and the communication was based on the evidence of a stranger to this case. Comparison of the lab results show, without doubt, that two different men were tested in these two proceedings. LabCorp was sued for negligence for allowing a different sample to be tested and reported. The privilege provides no protection against negligent conduct in performing paternity tests.

¶ 15 The negligence claim arises **not** out of LabCorp's **communication** to DHS, but out of LabCorp's **conduct in the performance of its duties.** Berman's pleadings which allege LabCorp's "negligent reporting" of the

---

**4.** Libel is defined at 12 O.S.2011 § 1441:

Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends.

**5.** We held in *Pacific Employers Ins. Co. v. Adams*, 1946 OK 86, 168 P.2d 105, 196 Okl. 597, that for the absolute privilege to apply, the communication or publication must be relevant or material to the issues connected with the subject of inquiry. 168 P.2d at 106.

test results were necessary to show that different identification numbers were used with the same person's DNA sample. However, that sample did not come from White.

## EXISTENCE OF A DUTY

¶ 16 The elements of a claim for negligence are: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care. *Smith v. Hines,* 2011 OK 51, 261 P.3d 1129. Whether a duty exists is a question of law. *Miller v. David Grace, Inc.,* 2009 OK 49, 212 P.3d 1223. We must examine the relationship between the parties to determine whether the law will impose a duty on the defendant to prevent foreseeable injury to the plaintiff. Specifically, does LabCorp owe Berman, as the parent seeking to prove the paternity of her child, a duty of care to conduct accurate DNA testing which was ordered by DHS for child support purposes? This issue is a matter of first impression in Oklahoma.

¶ 17 DNA, or genetic, test results have become a part of our body of evidence law in Oklahoma in modern times. The results have been admitted as evidence in Oklahoma courts in cases involving: a determination of heirship to a decedent's estate, *Estate of Tytanic,* 2002 OK 100, 61 P.3d 249; criminal proceedings to revoke a suspended sentence, *Wortham v. State of Oklahoma,* 2008 OK CR 18, 188 P.3d 201; and to prove paternity to prevent an Indian adoption case from moving forward without notice to the natural father. See *Adoption of Baby Girl B.,* 2003 OK CIV APP 24, 67 P.3d 359. DNA evidence has also been used in criminal cases to exonerate wrongfully convicted criminal defendants in a murder case. See *Gore v. State of Oklahoma,* 2005 OK CR 14, 119 P.3d 1268. Moreover, our Legislature adopted the Uniform Parentage Act, 10 O.S. Supp.2006, §§ 7700–101 to 7800, which specifically provides for genetic testing to determine parentage. See 10 O.S. Supp.2006 § 7700–501 through § 7700–511.

¶ 18 The importance of reliable and accurate DNA test results cannot be overstated. This type of forensic evidence is becoming part of our jurisprudence, and this trend is not likely to end. Much stands in the balance of the lives of those relying on such test results to protect their legal rights in a court of law. Inaccurate results could deal a devastating blow to those who otherwise have no ability to prove their cases on their own. Without recourse against a negligent defendant, a plaintiff has no remedy. Berman stands in that position in her relationship with LabCorp. Inaccurate results proved fatal to her case in her DHS proceeding. She was forced to pursue further legal action at her own expense. Her risk was foreseeable, and LabCorp owed her a duty to prevent that risk of harm.

¶ 19 We, therefore, hold LabCorp owed a duty to Berman to perform accurate DNA testing for purposes of determining the paternity of her child. The trial court erred in granting summary judgment. We, therefore, reverse and remand this case for trial.

¶ 20 CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; REVERSED AND REMANDED.

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, GURICH, JJ., concur.

WINCHESTER and REIF, JJ., dissent.