2014 OK 42

**Randy SMITH, as the natural father and next of kin of Kyle Smith, deceased, Petitioner/Appellant,**

v.

**The CITY OF STILLWATER and the Board of County Commissioners for Payne County, Defendants/Appellees.**

**No. 111971.**

Supreme Court of Oklahoma.

May 20, 2014.

1194

Woodrow K. Glass and Scott F. Brockman, Ward & Glass, L.L.P., Norman, Oklahoma, for Petitioner/Appellant Randy Smith.

John Edward Dorman, Stillwater, Oklahoma, for Defendant/Appellee City of Stillwater.

Chris J. Collins and Stephen L. Geries, Collins Zorn & Wagner, PC, Oklahoma City, Oklahoma, for Defendant/Appellee Board of County Commissioners for Payne County.

COMBS, J.:

¶ 1 Decedent was allegedly engaged in drag racing while operating a motorcycle on the night of August 8, 2008. A police officer for the City of Stillwater attempted to stop Decedent. When Decedent failed to stop, several Payne County and City of Stillwater law enforcement officers pursued him. In the course of the pursuit, Decedent drove his motorcycle into the edge of a "T" intersection, resulting in a crash into a creek where he struck a tree and was killed.

## I.

## Procedural History

¶ 2 Smith, as the natural father and next of kin of Decedent, filed a wrongful death action pursuant to 12 O.S. § 1054 on February 8, 2010, against the City, the County, and the State of Oklahoma.[1] In his Petition, Smith asserted, among other things, that the defendants: 1) "maintained policies related to pursuits of individuals suspected of committing major and minor offenses"; 2) the defendants' law enforcement officers "negligently failed to follow standard and acceptable poli-cy practices"; and 3) the defendants "negligently trained and supervised those individual law enforcement officers engaged in the pursuit of Kyle Smith on August 8, 2008." Petition, Record on Accelerated Appeal, pp. 3–5.

¶ 3 The County filed a motion to dismiss for failure to state a claim on April 21, 2010, pursuant to 12 O.S. § 2012(B)(6). The County argued that it was immune from any liability pursuant to certain provisions of the Governmental Tort Claims Act (GTCA), namely those found at 51 O.S. Supp.2004 § 155(4)-(5)[2], which provides:

> The state or a political subdivision shall not be liable if a loss or claim results from:
>
> . . .
>
> 4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
>
> 5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees;

The trial court sustained the County's motion to dismiss on July 1, 2010, based upon the application of the immunity provisions of the GTCA.

¶ 4 Approximately one week after the trial court granted the County's motion to dismiss, this Court decided *State ex rel. Oklahoma Dept. of Public Safety v. Gurich*, 2010 OK 56, 238 P.3d 1. In *Gurich*, this Court examined the applicability of the immunity provisions of Section 155 of the GTCA to suits based on the actions of law enforcement officers engaged in police pursuits, and determined the State did not enjoy absolute immunity for the actions of its officers engaged in police pursuits. 2010 OK 56, ¶ 7, 238 P.3d 1. On August 9, 2010, after this Court decided *Gurich*, Smith filed a motion to reconsider, citing the *Gurich* decision. The trial court entered an order November

---

1. Smith dismissed defendant State of Oklahoma, *ex rel.* Oklahoma Highway Patrol, on August 30, 2012.

2. Though 51 O.S. § 155 has been amended several times since decedent's death, the relevant provisions have remained unchanged.

9, 2010, overruling Smith's motion and formally dismissing the County.

¶ 5 The City made a motion for summary judgment on August 31, 2012. In its Motion for Judgment and Brief in Support, the City argued that, much like the County, it was immune from liability pursuant to Section 155 of the GTCA. The City also asserted that its law enforcement officers owed no duty of care to Decedent because: 1) at common law officers did not owe a duty of care to a fleeing suspect; and 2) while this Court determined in *Gurich* that officers owe a duty of care to innocent bystanders when they are engaged in pursuit of a fleeing suspect, the Court was silent concerning a duty to the fleeing suspect.

¶ 6 In response, Smith argued that pursuant to *Gurich,* the City was not immune to suit based on the protections of 51 O.S. § 155. Smith also argued that the City did owe a duty of care to Decedent, created by the pursuit policies of the City's police department and by the language of 47 O.S. § 11–106. The trial court granted summary judgment in favor of the City on June 10, 2013, finding: 1) the City was not immune from tort liability for the manner in which emergency vehicles were operated, pursuant to *Gurich*; and 2) law enforcement officers owe no duty to protect fleeing suspects from their own actions, as the relief contemplated by *Gurich* was limited to bystanders. The trial court also declined to revisit its earlier ruling dismissing the County.

¶ 7 Smith appealed, and the Court of Civil Appeals, Division I, affirmed in part, reversed in part, and remanded, holding that: 1) the trial court abused its discretion by denying Smith's motion to reconsider the order dismissing the County based on governmental immunity; and 2) the City was entitled to judgment as a matter of law, as law enforcement officers in a police pursuit do not owe a duty of care to the fleeing suspect.

¶ 8 Smith filed his Petition for Writ of Certiorari on December 23, 2013, asserting that the Court of Civil Appeals erred by holding that law enforcement officers in a police pursuit do not owe a duty of care to the fleeing suspect. The County filed its Petition for Certiorari on December 26, 2013, asserting that: 1) its dismissal by the trial court was proper because it was immune to suit for the actions of its law enforcement officers pursuant to 51 O.S. § 155; and 2) the Court of Civil Appeals erred by holding that a duty of care to a fleeing suspect might be imposed by mandatory guidelines set forth in a law enforcement entity's policy on vehicular pursuits. The Court granted both petitions for certiorari, and the cause was assigned to this office on March 10, 2014.

## II.

### Title 51 O.S. § 155 Does Not Immunize Political Subdivisions for the Actions Taken by their Law Enforcement Officers while Engaged in Police Pursuits.

¶ 9 The County asserts on certiorari that the Court of Civil Appeals erred when it determined the trial court abused its discretion by failing to grant Smith's motion to reconsider the trial court's dismissal of the County on the grounds that the County is immune from liability pursuant to the GTCA, 51 O.S. § 151 et seq., for actions taken by its law enforcement officers engaged in police pursuit. This Court determines that the County is not immune from liability pursuant to the GTCA, 51 O.S. § 151 et seq., and the trial court abused its discretion by failing to reconsider its dismissal of the County.

### A. Standard of Review

¶ 10 A "motion to reconsider" does not technically exist within the statutory nomenclature of Oklahoma practice and procedure. *Pierson v. Canupp,* 1988 OK 47, ¶ 3 n. 1, 754 P.2d 548; *Sellers v. Oklahoma Pub. Co.,* 1984 OK 11, ¶ 11, 687 P.2d 116. However, if timely filed, a "motion to reconsider" may be treated as a motion for new trial under 12 O.S. § 651 (if filed within ten (10) days of the filing of the judgment, decree, or appealable order), or it may be treated as a motion to modify or to vacate a final order or judgment under the terms of 12 O.S. §§ 1031 and 1031.1 (if filed after ten (10) days but within thirty (30) days of the filing of the judgment, decree, or appealable order).

*Pierson,* 1988 OK 47, ¶ 3 n. 1, 754 P.2d 548; *Schepp v. Hess,* 1989 OK 28, ¶ 1 n. 2, 770 P.2d 34.

¶ 11 The standard of review for both denial of a motion for a new trial and denial of a motion to modify or to vacate a final order or judgment is the same: abuse of discretion. *Capshaw v. Gulf Ins. Co.,* 2005 OK 5, ¶ 7, 107 P.3d 595; *Ferguson Enters., Inc. v. H. Webb Enters., Inc.,* 2000 OK 78, ¶ 5, 13 P.3d 480. An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Spencer v. Oklahoma Gas & Elec. Co.,* 2007 OK 76, ¶ 13, 171 P.3d 890; *Fent v. Oklahoma Natural Gas Co.,* 2001 OK 35, ¶ 12, 27 P.3d 477; *KMC Leasing, Inc. v. Rockwell–Standard Corp.,* 2000 OK 51, ¶ 10, 9 P.3d 683. However, in this cause, the propriety of the trial court's denial of the "motion for reconsideration" rests on the underlying correctness of its decision to dismiss the County. The abuse of discretion question is therefore settled by our *de novo*[3] review of the dismissal's correctness.[4]

¶ 12 This Court discussed the parameters of motions to dismiss in detail in *Gens v. Casady School,* 2008 OK 5, 177 P.3d 565. This Court noted that generally motions to dismiss are viewed with disfavor. *Casady School,* 2008 OK 5, ¶ 8, 177 P.3d 565; *May, M.D. v. Mid–Century Ins. Co.,* 2006 OK 100, ¶ 10, 151 P.3d 132; *Lockhart v. Loosen,* 1997 OK 103, ¶ 4, 943 P.2d 1074.

The function of a motion to dismiss is to test the law of the claims, not the facts supporting them. *Casady School,* 2008 OK 5, ¶ 8, 177 P.3d 565; *State ex rel. Wright v. Oklahoma Corp. Comm'n,* 2007 OK 73, ¶ 52, 170 P.3d 1024; *Estate of Hicks ex rel. Summers v. Urban East, Inc.,* 2004 OK 36, ¶ 5, 92 P.3d 88. No dismissal for failure to state a claim upon which relief may be granted should be allowed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle them to relief. *Casady School,* 2008 OK 5, ¶ 8, 177 P.3d 565; *State ex rel. Wright,* 2007 OK 73, ¶ 52, 170 P.3d 1024; *Dyke v. Saint Francis Hosp., Inc.,* 1993 OK 114, n. 6, 861 P.2d 295.

¶ 13 Plaintiffs need neither identify a specific theory of recovery nor set out the correct remedy or relief to which they may be entitled. *Casady School,* 2008 OK 5, ¶ 8, 177 P.3d 565; *Mid–Century Ins. Co.,* 2006 OK 100, ¶ 10, 151 P.3d 132. If any set of facts can be established which is consistent with the allegations, a motion to dismiss should be denied. *Casady School,* 2008 OK 5, ¶ 8, 177 P.3d 565; *Loosen,* 1997 OK 103, ¶ 4, 943 P.2d 1074; *Indiana Nat'l Bank v. State Dept. of Human Services,* 1994 OK 98, ¶ 4, 880 P.2d 371. Dismissal is appropriate only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable theory. *Casady School,* 2008 OK 5, ¶ 8, 177 P.3d 565. Where not all claims appear to be frivolous on their face or

3. Review of the trial court's dismissal for failure to state a claim upon which relief may be granted presents a question of law as to whether the petition is legally sufficient, and questions of law are reviewed *de novo. Jordan v. Western Farmers Elec. Co-op.,* 2012 OK 94, ¶ 5, 290 P.3d 9 (distinguished on other grounds by *Monge v. RG Petro–Machinery (Group) Co. Ltd.,* 701 F.3d 598 (10th Cir.2012)); *Hayes v. Eateries, Inc.,* 1995 OK 108, ¶ 2, 905 P.2d 778.

4. The Court has previously applied the same logic to reviewing a trial court's denial of a motion for new trial after a grant of summary judgment:

A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness. (Internal citations omitted).
*Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100. *See also Head v. McCracken,* 2004 OK 84, ¶ 2, 102 P.3d 670 ("the correctness of the trial court's new trial denial rests on the propriety of the earlier grant of summary judgment.... Thus, we must examine the correctness of the trial court's summary judgment grant."); *Evers v. FSF Overlake Associates,* 2003 OK 53, ¶ 6, 77 P.3d 581 ("[i]n this case the propriety of the trial court's denial of the new trial motion rests on the correctness of the trial court's grant of summary judgment. Therefore, we must examine by *de novo* review the trial court's decision on summary judgment in order to determine whether the trial court abused its discretion in denying the new trial motion.").

without merit, dismissals for failure to state a claim upon which relief may be granted are premature. *Casady School,* 2008 OK 5, ¶ 8, 177 P.3d 565; *Washington v. State ex rel. Dept. of Corrections,* 1996 OK 139, ¶ 7, 915 P.2d 359.

## B. The Governmental Tort Claims Act

▮▮▮ ¶ 14 The GTCA is the exclusive remedy by which an injured plaintiff may recover against a governmental entity for its negligence. *Speight v. Presley,* 2008 OK 99, ¶ 11, 203 P.3d 173; *Fuller v. Odom,* 1987 OK 64, 741 P.2d 449. The GTCA adopts the doctrine of sovereign immunity and provides that the State, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts. Title 51 O.S. § 152.1(A); *Nelson v. Pollay,* 1996 OK 142, ¶ 5, 916 P.2d 1369. The GTCA waives the immunity of the State and its political subdivisions, but only to the extent and in the manner provided in the act. Title 51 O.S. § 152.1(B); *Anderson v. Eichner,* 1994 OK 136, ¶ 9, *890 P.2d 1329.* Title 51 O.S. § 153 extends governmental accountability to all torts for which a private person or entity would be liable, subject only to the act's specific limitations and exceptions. *Eichner,* 1994 OK 136, ¶ 9, 890 P.2d 1329. The County asserts that it retains its sovereign immunity and is shielded from suit pursuant to specific limitations and exceptions codified at 51 O.S. § 155(4)-(5), that provide:

> The state or a political subdivision shall not be liable if a loss or claim results from:
>
> . . .
>
> 4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
>
> 5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees;

## C. *State ex rel. Oklahoma Dept. of Public Safety v. Gurich,* 2010 OK 56, 238 P.3d 1.

¶ 15 This Court addressed the issue of whether 51 O.S. § 155(4)-(6) together grant blanket immunity to the State or political subdivisions for the actions of their officers engaged in police pursuits in *State ex rel. Oklahoma Dept. of Public Safety v. Gurich,* 2010 OK 56, 238 P.3d 1. In that cause, the widow of an innocent bystander brought suit against the State of Oklahoma after the bystander was killed when a fleeing suspect involved in a police chase struck the vehicle in which the bystander was a passenger. The state asserted it was immune to suit pursuant to 51 O.S. § 155(4)-(6). This Court held to the contrary, and in doing so, explained that 51 O.S. § 155(4)-(6) cannot be too broadly interpreted. *Gurich,* 2010 OK 56, ¶ 11, 238 P.3d 1.

¶ 16 Specifically, the Court determined that an interpretation of 51 O.S. § 155(4)-(6) which protects any "discretionary decision" made by a law enforcement agency or its employee in order to provide police protection from action in tort is too broad. *Gurich,* 2010 OK 56, ¶ 9, 238 P.3d 1. Examining prior precedent, this Court noted that "[a]lmost all acts of government employees involve some element of choice and judgment." *Gurich,* 2010 OK 56, ¶ 10, 238 P.3d 1 (quoting *Nguyen v. State,* 1990 OK 21, ¶ 4, 788 P.2d 962). Therefore, "the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions." *Gurich,* 2010 OK 56, ¶ 10, 238 P.3d 1 (quoting *Nguyen,* 1990 OK 21, ¶ 5, 788 P.2d 962). "**Negligent performance of a law enforcement function is not shielded from immunity under the GTCA.**" *Gurich,* 2010 OK 56, ¶ 10, 238 P.3d 1 (citing *Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 27, 976 P.2d 1056) (emphasis added). In summation:

> Exemptions 4, 5, and 6, when read together with this Court's explanations, define clearly the scope of statutory immunity concerning law enforcement. **The State and its political subdivisions enjoy immunity for the choice to adopt or en-**

force a law, the formulation of law enforcement policy, and the method by which policy is implemented. The exemptions do not apply to tortious acts of government servants in the daily implementation of policy. The blanket immunity the State seeks concerning police pursuits does not exist in Oklahoma's statutory law or jurisprudence.

*Gurich*, 2010 OK 56, ¶ 11, 238 P.3d 1 (emphasis added).

¶ 17 The County attempts to distinguish *Gurich* from this cause. It asserts Smith's Petition rests entirely on two claims that fall within the exemptions of 51 O.S. § 155(4)-(5): 1) that the County and City's officers "negligently failed to follow standard and acceptable policy practices"; and 2) that the County and City "negligently trained and supervised those individual law enforcement officers engaged in the pursuit of Kyle Smith on August 8, 2008." County's Petition for Certiorari, p. 5. The County essentially argues that because Smith's claims mention policy or planning decisions, the County's assertion that 51 O.S. § 155(4)-(5) grant immunity is consistent with this Court's pronouncement in *Gurich*, and therefore the trial court's decision to grant the County's motion to dismiss for failure to state a claim was proper. This is a misinterpretation of both criteria for granting a motion to dismiss for failure to state a claim, as well as the core holding of *Gurich*.

¶ 18 Smith's petition alleges that defendants 1) "maintained policies related to pursuits of individuals suspected of committing major and minor offenses"; 2) "law enforcement officers. failed to follow standard and acceptable policy practices"; and 3) "as a direct result of the negligent actions of law enforcement officers. Kyle Smith was wrongfully deprived of his life." Record on Accelerated Appeal, pp. 4–5. The mere mention of "policy" in Smith's allegations is not sufficient to invoke the exemptions of 51 O.S. § 155(4)-(5). At least some of Smith's allegations very clearly challenge the **failure of individual law enforcement officers to ad-**

here to policies that were already in place while in pursuit of Smith: the negligent performance of a law enforcement function,[5] not the adoption of policy or planning level decisions. Pursuant to *Gurich* and *Nguyen*, "the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions." *Gurich*, 2010 OK 56, ¶ 10, 238 P.3d 1; *Nguyen*, 1990 OK 21, ¶ 5, 788 P.2d 962.

¶ 19 The trial court relied upon an erroneous conclusion of law when it granted the County's motion to dismiss for failure to state a claim upon which relief could be granted, and therefore abused its discretion by denying Smith's motion to reconsider.

## II.

### Law Enforcement Officers Engaged in Police Pursuit Do Not Owe a Duty of Care to the Suspect Being Pursued.

¶ 20 The second question on appeal, presented in Smith's Petition for Writ of Certiorari, is whether law enforcement officers engaged in vehicular pursuit owe a duty of care to the fleeing suspect. This is an issue of first impression in Oklahoma. The trial court determined they do not, and granted summary judgment in favor of the City. The Court of Civil Appeals, Division I, affirmed. We hold that Law Enforcement Officers engaged in police pursuits do not owe a duty of care to the suspect being pursued.

#### A. Standard of Review

¶ 21 A moving party is entitled to summary judgment as a matter of law when the pleadings, affidavits, depositions, admission or other evidentiary materials establish that no genuine issue of material fact exists. *Miller v. David Grace, Inc.*, 2009 OK 49, ¶ 10, 212 P.3d 1223; *Davis v. Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924. In reviewing the grant or denial of summary judgment, this Court views all inferences and conclusions to be drawn from the evidentiary materials in a

---

5. "Negligent performance of a law enforcement function is not shielded from immunity under the GTCA." *Gurich*, 2010 OK 56, ¶ 11, 238 P.3d 1

(citing *Salazar*, 1999 OK 20, ¶ 27, 976 P.2d 1056).

light most favorable to the nonmoving party. *Miller*, 2009 OK 49, ¶ 10, 212 P.3d 1223; *Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924. Because a grant of summary judgment is purely a legal issue, this Court's standard of review on appeal is de novo. *Miller*, 2009 OK 49, ¶ 10, 212 P.3d 1223; *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051.

### B. Title 47 O.S. § 11–106 does not provide that law enforcement officers of the State or a political subdivision engaged in police pursuit owe a duty of care to the suspect they are pursuing.

■■■■■■ ¶ 22 There are three elements to a claim for negligence: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care. *Berman v. Laboratory Corp. of America*, 2011 OK 106, ¶ 16, 268 P.3d 68; *Smith v. Hines*, 2011 OK 51, ¶ 12, 261 P.3d 1129. The cornerstone of a negligence action is the existence of a duty, and the issue of whether a duty exists is a question of law. *Gurich*, 2010 OK 56, ¶ 6, 238 P.3d 1; *Miller*, 2009 OK 49, ¶ 10, 212 P.3d 1223; *Bray v. St. John Health Sys., Inc.*, 2008 OK 51, ¶ 6, 187 P.3d 721. If the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959.

¶ 23 Smith argues that the provisions of 47 O.S. § 11–106 create a duty of care on the part of law enforcement officers owed to suspects they are pursuing in a vehicle. Title 47 O.S. § 11–106 is part of the Model Uniform Vehicle Code adopted by Oklahoma in 1961, setting the "Rules of the Road." *Gurich*, 2010 OK 56, ¶ 21, 238 P.3d 1; see 1961 Okla Sess. Laws 373 (codified at 47 O.S §§ 11–101 to 11–1405).[6] Title 47 O.S. § 11–106(A)-(D) grant certain exemptions to the "Rules of the Road" for drivers of emergency vehicles in specific circumstances, and provide:

A. The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privilege set forth in this section, but subject to the conditions herein stated.

B. The driver of an authorized emergency vehicle may:

1. Park, or stand, irrespective of the provisions of this chapter;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

3. Exceed the maximum speed limits so long as speeding does not endanger life or property;

4. Disregard regulations governing direction of movement; and

5. Disregard regulations governing turning in specified directions.

C. The exemptions herein granted to the driver of an authorized emergency vehicle shall apply only when the driver is properly and lawfully making use of an audible signal or of flashing red or blue lights or a combination of flashing red and blue lights meeting the requirements of Section 12–218 of this title, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red or blue light visible from in front of the vehicle. This subsection shall not be construed as requiring a peace officer operating a police vehicle properly and lawfully in response to a crime in progress to use audible signals.

D. The exemptions in paragraphs 3 and 5 of subsection B of this section shall be granted to a law enforcement officer operating an authorized emergency vehicle for law enforcement purposes without using audible and visual signals required by this section as long as the action does not endanger life or property if the officer is following a suspected violator of the law with probable cause to believe that:

---

**6.** As this Court pointed out in *Gurich*, most states patterned their provisions concerning emergency vehicles after the Model Uniform Vehicle Code, although they vary considerably as to their degree of conformity with it. 2010 OK 56, ¶ 21, 238 P.3d 1.

1. Knowledge of the presence of the officer will cause the suspect to:

    a. destroy or lose evidence of a suspected felony,

    b. end a suspected continuing felony before the officer has obtained sufficient evidence to establish grounds for arrest, or

    c. evade apprehension or identification of the suspect or the vehicle of the suspect; or

2. Because of traffic conditions, vehicles moving in response to the audible or visual signals may increase the potential for a collision.

The exceptions granted in this subsection shall not apply to an officer who is in actual pursuit of a person who is eluding or attempting to elude the officer in violation of Section 540A of Title 21 of the Oklahoma Statutes.

However, while 47 O.S. § 11–106(A)-(D) serve to grant drivers of emergency vehicles certain exemptions to the "Rules of the Road," 47 O.S. § 11–106(E) provides:

E. The provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others.[7]

¶ 24 In *Gurich*, this Court examined the language of 47 O.S. § 11–106 in the context of police pursuits and determined that reckless disregard for the safety of others is the duty of care an emergency vehicle driver owes **to the public** while operating pursuant to 47 O.S. § 11–106. 2010 OK 56, ¶ 24, 238 P.3d 1. This Court was persuaded by multiple factors, including: 1) the "reckless dis-

regard" clause in Section 11–106(E), that cannot be considered surplusage; 2) public policy demands a standard higher than mere negligence for situations involving emergency vehicles; and 3) any decision to pursue or continue a pursuit involves striking a balance between law enforcement effectiveness and the risk of injury to the public. *Gurich*, 2010 OK 56, ¶ 25–27, 238 P.3d 1.

¶ 25 This Court decided *Gurich* in the specific context of claims against the State brought by bystanders injured in the course of police pursuits. 2010 OK 56, ¶ 1 & ¶ 18, 238 P.3d 1. Smith argues, however, that the language of 47 O.S. § 11–106 and *Gurich* indicate that law enforcement officers owe the same duty of care not just to innocent bystanders, but to the suspect who is the very subject of the pursuit. Smith focuses on specific language in 47 O.S. § 11–106(E):

The provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of **all persons,** nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others. (Emphasis added).

Smith argues that "all persons" must be read to include the fleeing suspect.

¶ 26 Other states have adopted various statutory provisions similar to those of 47 O.S. § 11–106 and interpreted them in the context of this factual situation. The majority of those states have found no duty to the fleeing suspect. In *City of Winder v. McDougald*, 276 Ga. 866, 583 S.E.2d 879 (2003), the Supreme Court of Georgia determined that Georgia's analogous statutory provision, found at OCGA § 40–6–6 [8], did not

---

**7.** Title 47 O.S. § 11–106(E) is not the only section within Title 47 that contains this language. The same language is found within 47 O.S. § 11–405(B), which provides:

    B. This section shall not be construed to require a peace officer operating a police vehicle properly and lawfully in response to a crime in progress to use audible signals nor shall this section operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the road or highway.

**8.** The Georgia statute is not identical to Oklahoma's, but does contain much of the operative language. OCGA § 40–6–6 was amended in 1995 by the Georgia legislature to specifically provide for a "reckless disregard standard." *City of Winder v. McDougald*, 276 Ga. 866, 867, 583 S.E.2d 879, 880. The statute provides in pertinent part:

    (d)(1) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons.

extend liability to the subject of a police chase. The Supreme Court of Georgia determined that because the statute and its reckless disregard standard served to limit liability, the legislature did not intend to simultaneously expand liability to cover injuries to a fleeing suspect, and to read it as doing so would be inconsistent with public policy and lead to an absurd result. *McDougald,* 583 S.E.2d at 880.

¶ 27 In *Robinson v. City of Detroit,* 462 Mich. 439, 613 N.W.2d 307 (2000), the Supreme Court of Michigan determined that the police owed no duty of care to a wrongdoer, whether a fleeing driver or passenger. The court determined that such a result was consistent with the language of M.C.L. § 257.632, which did not exempt police from the consequences of a "reckless disregard for the safety of others." *Robinson,* 613 N.W.2d at 314.

¶ 28 In *Bryant v. Beary,* 766 So.2d 1157 (Fla.Dist.Ct.App.2000) (review denied by *Bryant v. Beary,* 789 So.2d 343 (Fla.2001)), the Florida District Court of Appeals determined that no duty to a fleeing driver was created by Section 316.072(C) of the Florida Statutes (1997), which provided:

> (c) The foregoing provisions shall not relieve the driver of a vehicle specified in paragraph (a) from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his or her reckless disregard for the safety of others.

The court determined that the language of the statute was:

> ... not intended to create a duty where none exists, but to preserve any that do exist. Common sense and all rational notions of public policy dictate that a violator fleeing law enforcement who injures himself as a result of his own criminal miscon-

duct should not be able to bring an action for negligence against the law enforcement officer trying to detain him, or against his employer.

¶ 29 Only one court has considered this issue and determined that law enforcement officers owe a duty of care to fleeing suspects. In *Torrie v. Weber County,* 2013 UT 48, 309 P.3d 216, the Supreme Court of Utah examined Utah Code section 41–6a–212(6), which provides:

> (6) The privileges granted under this section do not relieve the operator of an authorized emergency vehicle of the duty to act as a reasonably prudent emergency vehicle operator in like circumstances.

The court determined that:

> [t]he legislature's failure to include a carve-out exception to the duty referenced in subsection (6) for fleeing suspects, an act which we consider to be deliberate on the part of the legislature, reinforces our determination that such a duty should therefore be imposed.
>
> While we recognize that other jurisdictions have looked to the plain language of similar statutes and interpreted that the duty did not extend to fleeing suspects, we decline to depart from our established plain language analysis.

*Weber County,* 2013 UT 48, ¶¶ 11–12, 309 P.3d 216 (internal citations omitted).

■■■ ¶ 30 Smith argues that we should adopt the view of the Supreme Court of Utah in *Torrie v. Weber County,* and hold that the Legislature's inclusion of the language "duty to drive with due regard for the safety of all persons" creates a duty on the part of law enforcement to fleeing suspects. Smith correctly asserts that, generally, statutes are to be interpreted in accordance with their plain, ordinary meaning according to the import of the language used. *Hubbard v. Kaiser–Fran-*

---

(2) When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard

for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. Where such reckless disregard exists, the pursuit may be found to constitute a proximate cause of the damage, injury, or death caused by the fleeing suspect, but the existence of such reckless disregard shall not in and of itself establish causation.

OCGA § 40–6–6(D)(1)–(2).

*cis Oil Co.*, 2011 OK 50, ¶ 8, 256 P.3d 69; *In re Certification of Question of State Law*, 1977 OK 16, ¶ 5, 560 P.2d 195. Nevertheless, where the literal meaning of a statute would result in great inconvenience or lead to absurd consequences the Legislature could not have contemplated, we are bound to presume such consequences were not intended, and must adopt a construction which will promote the ends of justice and avoid absurdity. *Hubbard*, 2011 OK 50, ¶ 8, 256 P.3d 69; *Cox v. Dawson*, 1996 OK 11, ¶ 20, 911 P.2d 272; *Oliver v. City of Tulsa*, 1982 OK 121, ¶ 25, 654 P.2d 607.

■ ¶ 31 Title 47 O.S. § 11–106(E) limits liability by setting a higher standard than mere negligence for police pursuits. *See Gurich*, 2010 OK 56, ¶¶ 25–27, 238 P.3d 1. As this Court stated in *Gurich:*

A police pursuit is "one of the most volatile, dangerous, and unpredictable tasks of police work." Andrew G. Cooley & Brock Gavery, *Police Pursuit and High–Speed Driving Lawsuits*, The Police Chief, Oct. 2006 at 26, 28. As such, liability should be reserved only for those who recklessly disregard the risks to the public created by the decision to commence or continue a police pursuit.

2010 OK 56, ¶ 26, 238 P.3d 1.

By intentionally incorporating the reckless disregard standard in 47 O.S. § 11–106(E), the legislature was restricting liability for officers engaged in police pursuits by requiring more than mere negligence, precisely because "public policy demands a higher standard." *Gurich*, 2010 OK 56, ¶ 26, 238 P.3d 1.

■ ¶ 32 Public policy demands a higher standard because any decision to pursue or continue a pursuit involves striking a balance between law enforcement effectiveness and the risk of injury to the public.

A standard of "reckless disregard" is more consistent with the balancing of benefit and risk required by a typical police policy than is a standard of mere negligence. As the Kansas Supreme Court observed, "the duty of protecting the public is coextensive with the duty of apprehending suspected criminals." *Robbins [v. City of Wichita*,

285 Kan. 455], 172 P.3d [1187] at 1199 [ (2007) ].

*Gurich*, 2010 OK 56, ¶ 27, 238 P.3d 1.

Central to this balancing act is a determination of which is greater: the need to apprehend the suspect or the risk to the innocent public. To assume that by limiting police liability to the public (by imposing a standard greater than negligence) the Legislature also intended to increase liability by creating a duty to the fleeing suspect, the very individual responsible for the risk to the public in the first place, is an absurd result.

¶ 33 In *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), the Supreme Court of the United States examined whether a law enforcement officer violated a motorist's Fourth Amendment right against unreasonable seizure when the officer terminated the car chase by forcing the motorist off the road. Though the Court in *Harris* was examining a different question, its analysis highlights the important differences between bystanders to a police pursuit and the subjects of the pursuit. The Court stated:

But wait, says respondent: Couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best. Whereas [the officer's] action—ramming respondent off the road—was certain to eliminate the risk that respondent posed to the public, ceasing pursuit was not.

. . . . [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so *recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness. Instead, we lay down a more sensible rule: **A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not**

**violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.**

*Harris,* 550 U.S. 372 at 385–86, 127 S.Ct. 1769 (emphasis added).

¶ 34 Every motorist in the state of Oklahoma has an affirmative duty to stop their vehicle when directed to do so by a law enforcement officer.[9] By fleeing from law enforcement, it is the suspect who's unlawful and dangerous actions necessitate pursuit in the first place. It would be absurd to conclude that law enforcement officers, out of concern for the safety of a fleeing suspect, must cease pursuit of that individual or risk possible civil liability to the suspect. *Jackson v. Oliver,* 204 Mich.App. 122, 514 N.W.2d 195, 197 (1994).

¶ 35 For similar reasons, the Court of Civil Appeals' application of *Carl v. City of Overland Park, Kan.,* 65 F.3d 866 (10th Cir.1995) was erroneous. In *City of Overland Park,* the Tenth Circuit Court of Appeals, applying Kansas substantive law, determined that specific, mandatory guidelines in a police department's policy governing vehicle pursuits created a special duty of care to a fleeing suspect. 65 F.3d at 869. In this cause, the Court of Civil Appeals determined that the City's police department did not have similar mandatory guidelines, and so no duty of care was created. However, the Court of Civil Appeals left open the possibility that were such guidelines in place, a duty of care might be created. We disagree.

¶ 36 In deciding *City of Overland Park,* the Tenth Circuit Court of Appeals relied upon existing Kansas precedent stating: "[w]here the police are subject to guidelines or owe a specific duty to an individual, ... the police owe a special duty accordingly." *Fudge v. City of Kansas City,* 239 Kan. 369, 720 P.2d 1093, 1098 (1986) (Superseded by

statute as stated in *Woodruff v. City of Ottawa,* 263 Kan. 557, 951 P.2d 953 (1997)). Oklahoma does not have an analogous precedent, and we decline to adopt the rule in *City of Overland Park.* Our decision is in keeping with the majority of other states which have determined law enforcement officers owe no duty to a fleeing suspect, statutorily created or otherwise.

### CONCLUSION

¶ 37 Today, this Court reaffirms its decision in *State ex rel. Oklahoma Dept. of Public Safety v. Gurich,* 2010 OK 56, 238 P.3d 1, that negligent performance of a law enforcement function is not shielded from immunity under the GTCA. The provisions of 51 O.S. § 155 do not immunize the State or its political subdivisions for the actions taken by their law enforcement officers engaged in police pursuits. This Court also determines that the law enforcement officers of the State and its political subdivisions engaged in a police pursuit owe no duty of care to the fleeing suspect.

¶ 38 Though the district court's dismissal of the County on the grounds of immunity was based upon an erroneous legal conclusion, and therefore its refusal to reconsider was an abuse of discretion, this cause is resolved by this Court's determination that neither the County's nor the City's law enforcement personnel owed a duty of care to Decedent. This cause is therefore remanded to the trial court with instructions to enter summary judgment in favor of the County.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**

---

9. Title 47 O.S. § 11–103 provides:

No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control or regulate traffic.

Title 21 O.S. § 540A(A) provides, in pertinent part:

[a]ny operator of a motor vehicle who has received a visual and audible signal, a red light and a siren from a peace officer driving a

motor vehicle showing the same to be an official police, sheriff, highway patrol or state game ranger vehicle directing the operator to bring the vehicle to a stop and who willfully increases the speed or extinguishes the lights of the vehicle in an attempt to elude such peace officer, or willfully attempts in any other manner to elude the peace officer, or who does elude such peace officer, is guilty of a misdemeanor.

¶ 39 COLBERT, C.J., WINCHESTER, EDMONDSON, COMBS, and GURICH, JJ., concur.

¶ 40 KAUGER, J., concurs in result.

¶ 41 REIF, V.C.J., WATT and TAYLOR, JJ., concur in part and dissent in part.

TAYLOR, J., concurring in part and dissenting in part.

I concur that law enforcement officials owe no duty of care to fleeing suspects, and I dissent to the remainder of the opinion.

REIF, V.C.J., concurring in part, dissenting in part.

¶ 1 Even though I concur to vacate the opinion of the Court of Civil Appeals, I dissent from the disposition of this case reached by the majority. I would resolve the issues of duty and liability in this case based on the privilege set forth in 47 O.S.2011, § 11–106. *See State v. Gurich,* 2010 OK 56, dissent ¶¶ 1–11, 238 P.3d 1, 8–10 (dissenting opinion by Reif, J., with whom Taylor, V.C.J. and Hargrave, J., join). Briefly, the reason the pursuit *in this case* gave rise to no liability is that the pursuing officers acted completely within the legal privilege to pursue violators created in § 11–106. Accordingly, I would affirm the trial court's dismissals of the City of Stillwater and the Board of County Commissioners of Payne County on that basis and not extend the teachings of the *Gurich* case to injuries sustained by the fleeing violator.

¶ 2. By its express terms, section 11–106 extends a "privilege" to the driver of an emergency vehicle to pursue violators and operate the vehicle in ways that would otherwise violate certain traffic laws. The duty imposed upon the driver of the emergency vehicle when exercising the privilege is "**to drive** with due regard for the safety of all persons." *Id.* at 11–106(E) (emphasis added). While the privilege does not protect the driver "from the consequences of reckless disregard for the safety of others," this provision, like every other provision in § 11–106, addresses the operation of the emergency vehicle, not the decision to commence or the decision to continue the pursuit. *Id.*

¶ 3 A reading of the entire text of § 11–106 indicates that "a driver who maintains control of the emergency vehicle and does not harm anyone with the vehicle, remains within the privilege, breaches no duty, and commits no tort as a matter of law." *Gurich,* 2010 OK 56, dissent ¶ 5, 238 P.3d at 9. Very simply put, "once a pursuit is commenced, section 11–106 governs the action of the pursuing officer … and its continuation in compliance with section 11–106 creates nothing more than a condition for harm caused by the violator being pursued." *Id.* at dissent ¶ 9, 238 P.3d at 9 (emphasis omitted). This includes self-inflicted harm as in the case at hand.

¶ 4 Unlike the majority, I do find the statutory duty imposed upon the pursuing officer "to drive with due regard for the safety of all persons" to extend to the fleeing violator. In a proper case, breach of that duty in the operation of the emergency vehicle can visit liability on the governmental entities employing the pursuing officers. For example, losing control of the emergency vehicle and crashing into the vehicle of the fleeing violator who has stopped could take the officer outside of the privilege and give rise to liability under the Governmental Tort Claims Act.

¶ 5 This was not what happened in the case at hand, however. In the case at hand, the fleeing violator failed to negotiate a turn at a T-intersection and ran off the road untouched and unimpeded by any pursuing emergency vehicles. Because the pursuit of the deceased by the city and county law enforcement officers complied with 47 O.S. 2011, § 11–106 in every material regard, the privilege given by this statute shields both the City of Stillwater and the Board of County Commissioners of Payne County from liability under the Governmental Tort Claims Act.

WATT, J. concurring in part and dissenting in part.

¶ 1 I agree that, **under the unique facts presented in this case,** the respondents/appellees have no liability for the injury or death resulting from the high-speed chase instituted here. Nevertheless, I cannot go so far as to extend blanket immunity to all

governmental employees and entities where the fleeing individual, allegedly involved in criminal activity, is injured. To do so, would require that we overrule our opinion in *State ex rel. Oklahoma Dept. of Public Safety v. Gurich,* 2010 OK 56, 238 P.3d 1. It would also put me in the position of ignoring the precise language of 47 O.S.2011 § 11–106(E) extending protection to "all persons" and to "others" for a pursuit where an officer acts with "reckless disregard" for their safety.

### The Teachings of *State ex rel. Oklahoma Dept. of Public Safety v. Gurich*

¶ 2 Under *Gurich,* unless there is **no** evidence from which a jury could find a causal nexus between the pursuing officer's decision to give chase and remain in pursuit of the fleeing driver, the question of whether the officer acted with reckless disregard remains one of fact for the trier of fact.[1] The last paragraph of the same opinion contains the following sentence:

> The exemptions from liability found in the GTCA do not apply to a law enforcement officer's decision to pursue or maintain pursuit of a fleeing driver.

The teachings of *Gurich* are that: the issue of liability remains a question of fact absent no evidence to the contrary; the Governmental Tort Claims Act's protections do not extend themselves to a "law enforcement officer's decision to pursue or maintain pursuit of a fleeing driver;" and the standard to judge the officer's behavior by is the "reck-

less disregard" for the safety of others. Despite those teachings, the majority holds "that Law Enforcement Officers engaged in police pursuits do not owe a duty of care to the suspect being pursued."[2] I cannot go so far. I would extend the teachings enunciated in *Gurich* to situations involving fleeing citizens allowing the trier of fact to consider the issue of liability on a case-by-case basis.

### Legislature's Utilization of Terms "safety of all persons" and "safety of others" in 47 O.S.2011 § 11–106(E).

¶ 3 The primary goal of statutory interpretation is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed by the statutory language.[3] Intent is ascertained from the whole act in light of its general purpose and objective[4] considering relevant provisions together to give full force and effect to each.[5] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[6] Statutes are interpreted to attain that purpose and end.[7] Only where the legislative intent cannot be ascertained from the statutory language, *i.e.* in cases of ambiguity or conflict, are rules of statutory construction employed.[8] If the language is plain and clearly expresses the legislative will, further inquiry is unnecessary.[9]

¶ 4 The language of 47 O.S.2011 § 11–106 is not so clear as to be beyond interpretation. It provides that immunity may extend to drivers of authorized emergency vehicles

---

1. *State ex rel. Oklahoma Dept. of Public Safety v. Gurich,* 2010 OK 56, ¶¶ 17 and 24, 238 P.3d 1.

2. Because Vice Chief Justice Reif's position as it relates to a fleeing violator, in his concurring in part and dissenting in part opinion, also adopts the position of the majority, I cannot join therein.

3. *White v. Lim,* 2009 OK 79, ¶ 12, 224 P.3d 679; *Head v. McCracken,* 2004 OK 84, ¶ 13, 102 P.3d 670; *Balfour v. Nelson,* 1994 OK 149, ¶ 8, 890 P.2d 916.

4. *Keating v. Edmondson,* 2001 OK 110, ¶ 8, 37 P.3d 882; *McSorley v. Hertz Corp.,* 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.,* 1992 OK 61, ¶ 8, 832 P.2d 834.

5. *Haney v. State,* 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n,* 1992 OK 153, ¶ 8, 842 P.2d 750.

6. *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449; *Darnell v. Chrysler Corp.,* 1984 OK 57, ¶ 5, 687 P.2d 132.

7. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800, cert. denied, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶ 5, 594 P.2d 1210.

8. *Haggard v. Haggard,* 1998 OK 124, ¶ 1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.,* 1991 OK 50, ¶ 7, 812 P.2d 1355.

9. *White v. Lim,* see note 3, supra; *Rout v. Crescent Public Works Auth.,* 1994 OK 85, ¶ 10, 878 P.2d 1045.

"when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law ... **subject to the conditions stated herein.**" [Emphasis provided.] Subsection E of § 11–106 provides, in mandatory language,[10] that its provisions "**shall not** relieve the driver of an authorized emergency vehicle from the **duty to drive with due regard for the safety of all persons,** nor shall such provisions protect the driver from the consequences of **reckless disregard for the safety of others.**" [Emphasis provided.]

¶ 5 In referring to which persons officers were to drive with due regard for, the Legislature utilized the inclusive term "all." "All" is generally understood to mean nothing less than "every." [11] In the same sentence of subsection (E), the Legislature stressed that such personnel would not be protected from reckless disregard of "others," a term characterized as relating to the general public [12] or anyone.[13]

¶ 6 I do not consider myself as part of a department of government acting as a super-legislature with the power to overrule the Oklahoma Legislature's expressed intent. Neither do I assume that the Legislature does vain and useless acts in promulgating law.[14] I most certainly do not believe our Legislature to be inferior in expressing itself to any other legislative body. Therefore, I can only presume that, had the Oklahoma Legislature intended to exclude, in all circumstances, individuals from protection when engaged in criminal activity at the time of their injury while involved in a high-speed chase, it would have done so expressly. The makers of laws in Mississippi have done precisely that with the enactment of the Mississippi Code providing in pertinent part:

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

... (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person **not engaged in criminal activity at the time of injury** ...".

## CONCLUSION

¶ 7 I do not believe that there is any evidence of reckless disregard for the safety of the alleged criminal here or liability for the individual's injury. I do believe that, absent the Legislature's exclusion rather than inclusion of "all persons" and "others" in the protections authorized under Oklahoma's statutory scheme, no blanket rule will be applicable to determine liability. Rather, the causes must be reviewed on a case-by-case basis to determine whether the facts may authorize recovery by a party allegedly involved in criminal activity and injured in a high-speed chase. Here, I concur in the majority's determination of no liability under the facts presented but dissent from the blanket immunity given officials engaged in high-speed chases because the legislative language does not support such a result.

---

10. "Shall" is ordinarily interpreted as implying a command or mandate and "may" generally denotes permissive or discretionary authority. Nevertheless, it there are situations where "shall" may be interpreted as directory rather than mandatory. *Howard v. Zimmer, Inc.,* 2013 OK 17, fn. 24, 299 P.3d 463; *State ex rel. Oklahoma Bar Ass'n v. Mothershed,* 2011 OK 84, ¶ 62, 264 P.3d 1197; *Woods Development Co. v. Meurer Abstract & Title Co.,* 1985 OK 106, ¶ 11, 712 P.2d 30.

11. See, *JPMorgan Chase Bank v. Specialty Restaurants, Inc.,* 2010 OK 65, ¶ 16, 243 P.3d 8;

*State ex rel. Porter v. Ferrell,* 1998 OK 41, ¶ 9, 959 P.2d 576.

12. See, *Franks v. Independent Production Co.,* 2004 WY 97, 96 P.3d 484.

13. *Amica Mut. Ins. Co. v. Morowitz,* 388 Fed. Appx. 874 (Fla.2010).

14. *Surety Bail Bondsmen of Oklahoma, Inc. v. Insurance Comm'r,* 2010 OK 73, ¶ 26, 243 P.3d 1177; *Johnson v. City of Woodward,* 2001 OK 85, ¶ 14, 38 P.3d 218.