

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| LAUREN NEIL, et al., | ) | No. ED111474 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | No. 18SL-CC04457 |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | Honorable Bruce F. Hilton |
| | ) | |
| Respondents. | ) | Filed: April 9, 2024 |

Thomas C. Clark II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

## Introduction

This appeal arises after the circuit court entered summary judgment in favor of St. Louis County police officers Alex Maloy and Mark Jakob ("Officers"), finding they were not negligent for pursuing Appellants' decedent and driver Mikel Neil ("Neil") in a high-speed police chase that resulted in the death of Neil and his passenger ("T.W.") when the vehicle crashed into a tree. The trial court granted the Officers' motion for summary judgment because the Officers did not owe a duty to the decedents, there was not any evidence of proximate causation and the Officers were protected from civil liability by the public duty doctrine and official immunity.

Neil's family ("Appellants") now claims that the trial court erred in granting summary judgment because (1) the Officers owed a duty to decedent Neil under statutory and common law; (2) the Officers proximately caused decedent's death by conducting an illegal Precision

Immobilization Technique ("PIT") maneuver where the police vehicle struck the decedent's vehicle from behind and by failing to cease the pursuit and (3) official immunity and the public duty doctrine are inapplicable to the Officers because they were driving in a non-emergency situation and they acted with bad faith or malice.

We affirm because the Officers did not owe a duty to decedent, a fleeing motorist, under either statutory or common law.

## Background

On the evening of August 10, 2018, Officers Maloy and Jakob saw a silver 2003 Hyundai Elantra, driven by Neil, run a red light when turning left onto Airport Road in St. Louis County. The Officers were on duty but were traveling outside their specifically assigned patrol area. As the driver of the marked police vehicle, Officer Maloy turned on the emergency lights to initiate a traffic stop, but did not activate the siren. Neil did not stop his vehicle and instead began driving erratically. The Officers commenced pursuit, however they violated St. Louis County police policy because they did not inform dispatch of their decision. They followed as Neil sped through traffic signals, weaved in and out of traffic and drove at speeds up to 90 miles per hour ("mph") which exceeded the 35-mph speed limit posted on Airport Road.

As the vehicle neared Tyndall Drive, Neil swerved into oncoming traffic, forcing other drivers to swerve out of his path before crashing into a tree. The parties dispute whether Officer Maloy purposefully hit Neil's Elantra from behind in what is commonly referred to as a PIT maneuver, an action preceding the crash. The entire pursuit lasted approximately forty seconds. After the crash, Officer Maloy turned off the emergency lights and continued to drive past the Elantra, through the debris field, without rendering aid. Neil and his passenger died at the scene

2

from blunt trauma. The medical examiner revealed that at the time of the accident Neil was intoxicated, testing positive for fentanyl and cocaine.

Neil's daughters, Lauren and M.N., brought a wrongful death action in the circuit court against Officers Jakob and Maloy individually, and against their employer, St. Louis County, under a theory of *respondeat superior*. Their petition alleged that the defendants violated their duty to operate the police cruiser or the emergency vehicle with the highest degree of care and their negligent conduct during the pursuit caused their father's death. The Officers and the County both moved for summary judgment on the basis that the Officers did not owe a duty to the decedent and that plaintiffs cannot prove that the alleged negligence was the proximate cause of decedent's injuries. The Officers further argued that their actions were protected by official immunity and the public duty doctrine. The circuit court granted summary judgment in favor of the defendants. Neil's family appeals.

**Standard of Review**

Our review of summary judgment is *de novo*. *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 608 (Mo. banc 2008)). We apply "the same criteria as the trial court in determining whether summary judgment was proper." *Bowden v. Am. Modern Home Ins. Co.*, 658 S.W.3d 86, 91 (Mo. App. S.D. 2022). Thus, we do not defer to the trial court's order granting summary judgment. *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 906 (Mo. App. W.D. 2003). Rather, "[s]ummary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist." *Cowin v. Shelter Mutual Ins. Co.*, 460 S.W.3d 76, 77 (Mo. App. W.D. 2015). A defendant is entitled to summary judgment when she "shows facts that negate any one of the necessary elements of the plaintiff's claim." *Blackwell*

*Motors, Inc. v. Manheim Servs. Corp.*, 529 S.W.3d 367, 379 (Mo. App. E.D. 2017). We review the record "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Walsh v. State Farm Mutual Auto Ins. Co.*, 662 S.W.3d 105, 110 (Mo. App. W.D. 2023) (quoting *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020)).

**Discussion**

In their first point on appeal, Appellants assert that the Officers owed a statutory and common law duty of care to decedent. We disagree and find Point I dispositive. This case presents an issue of first impression for Missouri courts, whether police officers owe a duty of care to fleeing motorists. "The issue of whether a defendant had a duty of care to protect a decedent from injury under the circumstances of a given case is 'purely a question of law' to be decided by a court." *Scales v. Whitaker*, 615 S.W.3d 425, 431 (Mo. App. E.D. 2020) (internal quotation omitted).

In order to prevail in an action for negligence under these circumstances, a plaintiff must show: (1) the defendant owed a duty of care to the plaintiff's decedent; (2) the defendant breached that duty and (3) the defendant's breach proximately caused decedent's injury. *Wieland v. Owner-Operator Services, Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018). Therefore, whether Appellants can overcome summary judgment hinges on their ability to first establish that the Officers owed decedent, a fleeing motorist, a duty of care. For the reasons discussed below, we hold that such a duty does not exist.

*I. Statutory Duty*

First, Appellants argue that law enforcement officers engaged in vehicular pursuit owe a duty of care to the fleeing motorist pursuant to section 300.100,[1] which states that drivers of authorized emergency vehicles have "the duty to drive with due regard for the safety of all persons." Appellants urge that we cannot read "all persons" to mean "all persons except fleeing suspects" without eviscerating the plain language of the statute and assuming the legislature made a mistake. We disagree and hold that to interpret section 300.100 as Appellants suggest would lead to an unreasonable result and contradict the legislature's intended effort to safeguard the best interests of the general public. *See State v. Nash*, 339 S.W.3d 500, 508 (Mo. banc 2011). To conclude otherwise, fleeing motorists would take off at high rates of speed to avoid police apprehension safe in the knowledge that the legislature has insured them against pursuing law enforcement while law enforcement must risk civil liability to the fleeing motorist or cease pursuit and permit wrongdoers to escape. This is an untenable proposition and one that we cannot endorse. We find support for our holding in the decisions of sister states interpreting similar statutory language and finding that it does not create a duty of care to fleeing motorists.

"Determinations regarding issues of statutory interpretation are questions of law subject to *de novo* review." *Fox v. State*, 640 S.W.3d 744, 757 (Mo. banc 2022) (citing *Holmes v. Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021)). "When interpreting statutes, [we] must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Wilmoth v. Dir. of Revenue*, 669 S.W.3d 102, 110 (Mo. banc 2023) (quoting *Cosby v. Treasurer of Mo.*, 579 S.W.3d 202, 206 (Mo. banc 2019)). However, "[s]tatutes cannot be interpreted in ways that yield unreasonable or absurd results, and

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise indicated.

it is assumed that the legislature's enactment of a statute is meant to serve the best interests and welfare of the general public." *State v. Nash*, 339 S.W.3d 500, 508 (Mo. banc 2011).

"In interpreting a uniform act, decisions from other states may provide guidance." *Schutter v. Seibold*, 632 S.W.3d 820, 829 (Mo. App. W.D. 2021) (citing *Curtis v. James*, 459 S.W.3d 471, 475 (Mo. App. E.D. 2015)). As this is a case of first impression, "it is instructive to examine cases from other jurisdictions in addressing these issues." *Schembre v. Mid-Am. Transplant Ass'n*, 135 S.W.3d 527, 531 (Mo. App. E.D. 2004). "While we are not bound to follow the decisions of a sister state, they are persuasive, if based on sound principles and good reason." *Missouri Tp., Chariton Cnty. v. Farmers' Bank of Forest Green*, 328 Mo. 868, 876 (Mo. 1931). We may look to "the judicial decisions of sister states for assistance in discovering expressions of public policy." *Eyerman v. Mercantile Trust Co., N.A.*, 524 S.W.2d 210, 217 (Mo. App. 1975).

Section 300.100.4 mirrors the language of section 11-106(d) of the Uniform Vehicle Code, a model law published by the National Committee on Uniform Traffic Laws and Ordinances. This section of the Uniform Vehicle Code has been adopted in some iteration by a majority of states.[2] While we have not yet considered whether "the duty to drive with due regard

---

[2] *See* Ala. Code § 32-5A-7 (Alabama); 13 Ala. Admin. Code 02.140 (Alaska); Ariz. Rev. Stat. § 28-624 (Arizona); Ark. Code § 27-51-901 (Arkansas); Colo. Rev. Stat. § 42-4-108 (Colorado); Conn. Gen. Stat. § 14-283 (Connecticut); 18 DC Muni. Regs. § 2002 (D.C.); Fla. Stat. § 316-072 (Florida); Ga. Code Ann. § 40-6-6 (Georgia); Haw. Rev. Stat. § 291C-26 (Hawaii); Idaho Code Ann. § 49-623 (Idaho); 625 Ill. Comp. Stat. § 5/11-907 (Illinois); Ind. Code § 9-21-1-8 (Indiana); Iowa Code § 321.231 (Iowa); Kan. Stat. Ann. § 8-1506 (Kansas); Ky. Rev. Stat. Ann. § 189.940 (Kentucky); La. Stat. Ann. § 32:24 (Louisiana); Me. Stat. tit. 29-A, § 2054 (Maine); Md. Code, Transportation §21-106 (Maryland); Mich. Comp. Laws § 257.653 (Michigan); Miss. Code Ann. § 63-3-809 (Mississippi); Mont. Code Ann. § 61-8-107 (Montana); Neb. Rev. Stat. § 60-6,114 (Nebraska); Nev. Rev. Stat. § 484B.700 (Nevada); N.H. Rev. Stat. Ann. § 265:8 (New Hampshire); N.J. Rev. Stat. § 39:4-91 (New Jersey); N.M. Stat. § 66-7-6 (New Mexico); N.Y. Veh. & Traf. Law § 1104 (New York); N.D. Cent. Code § 39-10-33.2 (North Dakota); Ohio Rev. Code § 4511.041 (Ohio); Okla. Stat. tit. 47, § 11-106 (Oklahoma); Or. Rev. Stat. § 814.050 (Oregon); 75 Pa. Cons. Stat. § 3105 (Pennsylvania); 31 R.I. Gen. Laws § 31-12-9 (Rhode Island); S.C. Code Ann. § 56-5-760 (South Carolina); S.D. Codified Laws § 32-31-5 (South Dakota); Tenn. Code Ann. § 55-8-108 (Tennessee); Tex. Transp. Code § 546.005 (Texas); Vt. Stat. Ann. tit. 23, § 1015 (Vermont); Va. Code Ann. § 46.2-829 (Virginia); Wash. Rev. Code § 46.61.035 (Washington); W. Va. Code § 17C-2-5 (West Virginia); Wis. Stat. § 346.03 (Wisconsin); Wyo. Stat. Ann. § 31-5-106 (Wyoming).

for the safety of all persons" includes a duty to fleeing motorists in a police pursuit, courts in a number of our sister states have answered this very question and found that it does not.

In *Smith v. City of Stillwater*, the plaintiff sued the City of Stillwater for negligence after his son crashed his motorcycle in a creek, struck a tree and died after fleeing from police. 328 P.3d 1192, 1195 (Okla. 2014). The trial court granted summary judgment in favor of the city, finding that "law enforcement officers owe no duty to protect fleeing suspects from their own actions." *Id.* at 1196. Very similar to Missouri, the Oklahoma emergency vehicle statute states that "the driver of an authorized emergency vehicle" has "the duty to drive with due regard for the safety of all persons." *Id.* at 1201. And similar to this appeal, plaintiff subsequently argued that the "all persons" language must be interpreted to include the fleeing suspect. *Id.* The Supreme Court of Oklahoma rejected this argument, finding that it would be unreasonable to assume that the legislature "intended to increase [police] liability by creating a duty to the fleeing suspect, the very individual responsible for the risk to the public in the first place." *Id.* at 1203. Moreover, the court pointed out that "every motorist in the state of Oklahoma has an affirmative duty to stop their vehicle when directed to do so by a law enforcement officer . . . [b]y fleeing from law enforcement, it is the suspect whose unlawful and dangerous actions necessitate pursuit in the first place." *Id.* at 1204.

In *City of Winder v. McDougald*, the plaintiffs' fourteen-year-old daughter and decedent was speeding away from police when she lost control of her vehicle, hit a utility pole and died. 583 S.E.2d 879, 880 (Ga. 2003). The plaintiffs sued the officer and the city for the officer's reckless disregard of proper police procedures pursuant to the Georgia authorized emergency vehicles statute, section 40-6-6(d)(2). *Id.* The Supreme Court of Georgia concluded that "the legislature enacted subsection (d)(2) to limit liability when a fleeing suspect injures an innocent

7

person . . . [and] did not intend simultaneously to expand liability to cover injuries to the fleeing suspect," and that to hold otherwise is "inconsistent with public policy, and leads to an absurd result." *Id.*

In *Bryant v. Beary*, the plaintiff sued the Orange County sheriff's office for negligence after an officer engaged her son, a fleeing motorist, in a high-speed chase that resulted in his death. 766 So.2d 1157, 1158 (Fla. 5th DCA 2000). Pursuant to Florida law, drivers of emergency vehicles have "the duty to drive with due regard for the safety of all persons." Similarly, the plaintiff alleged the officer breached that duty to her son by engaging him in a police chase. *Id.* at 1158, 1160. Plaintiff still lost the argument, even after pointing out the egregious circumstances. More specifically, the officer violated the sheriff's office's pursuit procedures because he continued to follow her son even after "advising dispatch and a superior officer that he had terminated the chase." *Id.* at 1158. In fact, the officer was discharged for violating pursuit policy. *Id.* However, the Florida District Court of Appeals still held that a duty to the fleeing motorist did not exist and that "[c]ommon sense and all rational notions of public policy dictate that a violator fleeing law enforcement who injures himself as a result of his own criminal misconduct should not be able to bring an action for negligence against the law enforcement officer trying to detain him, or against his employer." *Id.* at 1160.

In *Jackson v. Oliver*, the plaintiff sued three Michigan state police troopers after plaintiff's decedent fled at a high rate of speed during an attempted traffic stop, broadsided a police cruiser and died. 514 N.W.2d 195, 196 (Mich. App. 1994). The plaintiff alleged that the troopers were negligent in their pursuit of the fleeing motorist. *Id.* On the appeal following summary judgment, the Michigan Court of Appeals affirmed the trial court's finding "that a fleeing wrongdoer should not be able to recover money damages from the officers who were

pursuing him." *Id.* at 197. In so holding, the appellate court stated: "Out of concern for public safety, police must sometimes allow fleeing suspects to get away. However, it would be absurd to conclude that the police, out of concern for the safety of a fleeing criminal suspect, must cease pursuit of the fleeing suspect or risk possible civil liability." *Id.* The Supreme Court of Michigan affirmed this decision in *Robinson v. City of Detroit*, in which it held that "the police owe no duty to a wrongdoer, whether the wrongdoer is the fleeing driver or a passenger." 613 N.W.2d 307, 314 (Mich. 2000).

Appellants point out that in *Torrie v. Weber County*, the Supreme Court of Utah held that a plain language reading of the state's emergency vehicle statute requires that "law enforcement officers engaged in pursuit owe a duty to all persons, including fleeing suspects." 309 P.3d 216, 218 (2013). However, the *Torrie* court conceded that "other jurisdictions have looked to the plain language of similar statutes and interpreted that the duty did not extend to fleeing suspects." *Id.* at 221. Interestingly, even this one example cited by Appellant has been neutralized by subsequent legislative action. When interpreting statutes, this court considers legislative intent when possible and avoids making law contrary to the legislative will. *Wilmoth v. Dir. of Revenue*, 669 S.W.3d 102, 110 (Mo. banc 2023) (quoting *Cosby v. Treasurer of Mo.*, 579 S.W.3d 202, 206 (Mo. banc 2019)). Resembling an effort to clarify their intent, the Utah legislature passed House Bill 20 modifying the state's traffic code and "amending provisions relating to the duty of care for certain emergency vehicle operators"[3] in 2014 and the year after *Torrie* was decided. As a result, Utah's current emergency vehicle statute expressly states that "the operator of a marked authorized emergency vehicle owes no duty of care . . . to a person who is . . . evading, fleeing, or otherwise attempting to elude the operator of a marked authorized emergency vehicle."[4]

---

[3] H.B. 20, 60th Leg., Gen. Sess. (Utah 2014); *see also* Utah Code § 41–6a–212 (2014).
[4] *Id.* (emphasis added).

Considering that many of these cases involve courts applying a similarly worded statute to similar factual circumstances, we find these decisions to be instructive, persuasive and offer keen insight when guiding our adjudication. Specifically, we agree with our sister states that extending a duty of care from pursuing law enforcement to fleeing motorists would lead to an illogical result where public safety is jeopardized and fleeing motorists may be insured from the harms of their own lawless behavior. We are not permitted to interpret the statutes of this state in such a way, nor will we assume that the legislature intended such a result. *Nash*, 339 S.W.3d at 508. We therefore hold that section 300.100 does not create a statutory duty to fleeing motorists.

*II. Common Law Duty*

Next, Appellants argue that law enforcement officers owe a duty of care to fleeing motorists at common law. Appellants rely principally on *Nelson v. City of Chester, Illinois*, where the family of a fleeing motorist filed a negligence claim against the city for "failing to properly train their police officers" after the driver died following a police pursuit. 733 S.W.2d 28, 30 (Mo. App. E.D. 1987). However, the *Nelson* court (1) did not directly address claims of negligence against the individual officers, and (2) affirmed the trial court's decision to dismiss those claims based on official immunity. *Id.* at 29–30. Thus, we find that *Nelson* offers little precedential value to this opinion.

Regardless, we still acknowledge the significance of public policy considerations as argued by Appellants. "The judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention of future harm; consideration of cost and ability to spread the risk of loss; [and] the economic

burden upon the actor and the community." *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 432 (Mo. banc 1985). On balance, these factors weigh against the existence of a common law duty to fleeing motorists.

"[F]oreseeability that some injury might result from the act complained of *normally* serves as the paramount factor in determining the existence of a duty." *Id.* at 431 (emphasis added). We agree it is foreseeable that motorists who flee from law enforcement may be injured in their attempt to evade apprehension. However, we find that foreseeability does not carry as great a weight under these circumstances as other considerations expressed in case law. Indeed, law enforcement must routinely act by creating possible risk to some in order to protect others from imminent harm.

For example, in *Scott v. Harris*, the United States Supreme Court considered whether it is reasonable under the Fourth Amendment for "an officer [to] take actions that place a fleeing motorist at risk of serious injury or death in order to stop the motorist's flight from endangering the lives of innocent bystanders." 550 U.S. 372, 374 (2007). There, the pursuing officer rammed his push bumper into a fleeing motorist's vehicle to force it to stop. *Id.* at 375. As a result, the fleeing vehicle crashed, and the motorist was rendered a quadriplegic. *Id.* When ruling on the reasonableness of the seizure by ramming the fleeing vehicle, the Court opined:

> "[W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights . . . Instead, we lay down a more sensible rule: A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."

*Id.* at 385–86.

Recognizing the *Scott* Court suggests that a balancing test is appropriate when determining if law enforcement owes a duty to a fleeing motorist under the Fourth Amendment, we take this into consideration when applying the *Hoover's Dairy* analysis and concluding that a duty does not exist. *See Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426 (Mo. banc 1985). Relatedly, a police officer's pursuit and ultimate seizure of a fleeing suspect must be reasonable pursuant to the Fourth Amendment. If the collective circumstances of the seizure reflect unreasonable conduct, then the fleeing suspect can pursue a cause of action under 42 U.S.C. Section 1983 which prohibits anyone acting under the authority of state law to deprive someone of a constitutional right. *See* 42 U.S.C. Sec. 1983. The existing consequences of a Section 1983 lawsuit also jeopardizes law enforcement liability, presents a deterrent to unreasonable police conduct and factors into the "prevention of future harm" under the *Hoover's Dairy* analysis. *Hoover's Dairy*, 700 S.W.2d at 432.

While acknowledging the tragic outcome for the fleeing motorist in both this most recent example and our matter, we find *Scott* instructive, especially when observing the similar circumstances. Just as the *Scott* court cited the significance of the danger to other innocent parties created by the reckless driving, the evidence reflects that Neil was presenting a positively perilous predicament to the public because he was driving erratically and at a high rate of speed forcing other motorists to swerve in order to avoid collision. The necessity for police action to thwart the threat to innocent third parties is reinforced by these factual circumstances. We believe the existing duty is sufficient to ensure that police pursuits are not conducted in a negligent manner without also requiring a duty to the fleeing motorist responsible for creating risk to themselves and others. Appellants effectively remind us about some of the troubling factual aspects involving this matter, further arguing that these circumstances warrant a different

outcome. While we agree that some of the police conduct toward the conclusion and following the pursuit is concerning, approaching contemptible, we balance this with the equally compelling argument that the public relies on law enforcement to respond quickly to suspected or actual criminal activity. This concept is fundamental to enforcing the rule of law and ensuring the safety of a law-abiding society. Swift police action is an interest that serves the public welfare and is worthy of protection.

Furthermore, unlawful conduct is not an interest worthy of protection. Decedent had an absolute duty to yield to the Officers when they approached with illuminated emergency lights. Section 304.022. Some of the concerning decisions preceding the crash such as the failure to activate the siren, patrolling outside their area, failing to advise dispatch about the pursuit or even the alleged PIT maneuver which is not visible in the video evidence marked Appellants' Exhibit F do not erase decedent's decision to flee from the marked police vehicle while driving recklessly, at an extraordinarily high rate of speed and for an extended time period of approximately forty seconds. In all likelihood, Neil's actions resemble a criminal felony offense because the flight created "a substantial risk of serious physical injury or death." Section 575.150.

More simply stated, there is not any social value in protecting such lawless behavior. The public has an interest in ensuring that Missouri roadways remain safe from dangerous drivers and that police can enforce the laws designed to protect that interest. Creating a duty to fleeing motorists would discourage law enforcement from pursuing suspects and invite future harm to innocent third parties by encouraging unlawful flight from police. Moreover, the public would bear the cost of compensating fleeing motorists for their injuries because, as in this case, the government employers of law enforcement are often sued under a theory of *respondeat superior*.

13

Thus, taxpayers would bear the burden of government defending lawsuits brought by fleeing motorists and the potential damages owed to those motorists. We therefore hold that public policy dictates that there is not a common law duty to fleeing motorists.

## Conclusion

Since the Officers did not owe decedent a duty of care under statutory or common law, summary judgment was appropriate as a matter of law. We affirm the decision of the trial court.

_____
Thomas C. Clark II, Presiding Judge

James M. Dowd, J., dissents in separate opinion and John P. Torbitzky, J., concurring in separate opinion.



# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| LAUREN NEIL, et al., | ) | No. ED111474 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | No. 18SL-CC04457 |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | Honorable Bruce F. Hilton |
| | ) | |
| Respondents. | ) | Filed: April 9, 2024 |

Thomas C. Clark II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

**CONCURRING OPINION**

I concur with the well-reasoned opinion of Judge Clark. That opinion should be considered the opinion of the Court. I write separately only to highlight that a police officer's duty in effecting the seizure of a criminal suspect is governed by the Constitutions of the United States and Missouri, not general negligence law. To hold otherwise would serve to expand negligence law into an area where it has no proper application.

The tort of negligence developed through the common law to hold individuals responsible for injuries caused when their careless actions caused a greater risk than society was willing to accept. The hallmark of negligence law is the desire to ensure that people act in a manner that does not unnecessarily increase the risk of harm to others. *See* Restatement (Second)

of Torts § 282 ("[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm.").

A police pursuit is a poor fit for the use of negligence law. If the officer decides pursuit is appropriate, the officer necessarily increases the risk of harm to the suspect. A prolonged chase, particularly one at high speeds, undoubtedly makes it more likely that the suspect will be injured. Moreover, an officer in a pursuit may find it necessary to use force to terminate the pursuit, not only to take the suspect into custody but also for the protection of other motorists. These are actions that may be entirely reasonable but that cannot be accomplished without increasing the risk of harm.

A holding that the officer owes the suspect a duty of care in negligence suggests that there is a threshold to which an officer intentionally can increase the risk of harm to the suspect before the officer's actions becomes negligent. But acknowledging that an officer may intentionally increase the risk of harm is anathema to the concept of negligence, which urges society to use ordinary care to avoid doing just that. Very likely, it is for this reason that no reported cases from this State, and very few from any others, have found that officers owe a duty of care in negligence to fleeing suspects.

That does not mean, however, that officers are free to stop a fleeing suspect in any manner they wish. Rather, the Fourth Amendment to the U.S. Constitution sets the parameters by which an officer may act when taking suspects into custody. Specifically, the Fourth Amendment requires that all seizures be reasonable. In *Scott v. Harris*, 550 U.S. 372, 381 (2007), our Supreme Court unquestionably recognized that, when an officer stops a fleeing suspect through force, the officer has seized the suspect. That seizure must be effectuated reasonably. *Id. Scott* also made clear that when a fleeing suspect is causing danger to others on the road, it is

2

reasonable for the officer to terminate the pursuit with force. *Id*. at 384-85. Questions regarding whether a suspect created danger to other motorists and the reasonableness of the use of an officer's force run on a spectrum. *Id.* at 386 (Ginsburg, J., concurring). What is reasonable force in one chase, may be excessive in another. And it is certainly conceivable that a jury could find that officers who use a prohibited maneuver to run a fleeing suspect off the road and then speed away from the scene in an apparent attempt to avoid responsibility acted with excessive and unreasonable force in effecting the stop. That question, however, is not before this Court to decide.

The only question that is before this Court concerns whether a duty in negligence exists. I see no common law duty, and I see no evidence that the General Assembly intended to create a duty with § 300.100, RSMo 2016.[1] That section is not written in terms of "creating" a duty. It is written in terms of retaining a duty then in existence. Section 300.100.4 states that the provisions allowing drivers of authorized emergency vehicles to violate certain traffic laws "shall not relieve the driver … from the duty to drive with due regard for the safety of all persons[.]" This language does not indicate legislative intent to create a duty owed by police officers to fleeing motorists simply by its use of the phrase "all persons." Instead, it reserves any already existing duty. I find further support for this position in § 300.105, which states that Missouri motorists must yield the right of way to approaching emergency vehicles when those vehicles are displaying their lights and sounding their siren. That section also includes language that is nearly identical to language in § 300.100.4. If the legislature intended to create a duty owed by police officers to fleeing suspects, it seems highly unlikely that it would do so with identical language in two separate sections. What seems much more likely, is that the legislature did not intend to do

---

[1] All further statutory references are to RSMo 2016.

anything other than to ensure that the common law duties of emergency vehicle drivers remained intact. Those common law duties did not include a duty in negligence to fleeing suspects.

To be clear, officers unquestionably owe a duty to innocent bystanders, just as do firefighters and ambulance drivers. That duty is subject to the doctrines of official immunity and the public duty doctrine, as the dissent lays out quite well. But when an officer begins to effectuate a seizure, the officer's duties to the individual or individuals being seized are governed by constitutional principles, principles that are much better suited to ensuring justice for anyone injured by an officer's excessive use of force.

_____
John P. Torbitzky, Judge



# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| LAUREN NEIL, et al., | ) | No. ED111474 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | No. 18SL-CC04457 |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | Honorable Bruce F. Hilton |
| | ) | |
| Respondents. | ) | Filed:  April 9, 2024 |

Thomas C. Clark II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

## DISSENT

I respectfully dissent.  In seeking to serve the interests of public safety and the unfettered right of police officers to carry out their duty without fear of personal liability, the majority's opinion goes too far.  It eliminates as a matter of law police officers' duty of care to fleeing suspects without exception and in *all* circumstances.  I share the majority's warranted concern that police officers diligently performing their duties should not fear personal liability for negligence.  But the majority's excision as a matter of law of any duty is unnecessary and unjustified given the current, well-developed Missouri legal scheme applicable to this case, including the doctrines of official immunity and public duty, which fully protect these critical policy interests.

Police officers' risk of liability is already extinguished by the official immunity doctrine when officers negligently perform their discretionary duties, such as while chasing suspects, *unless* the officers act willfully wrong, with malice, or corruptly. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). And when officers provide services or act for the benefit of the public at large, the public duty doctrine already eliminates any duty they might otherwise have to any specific citizen, but again only so long as the officer does not act in bad faith or with malice. *Id.* at 611. Finally, in accordance with recent caselaw including from our Supreme Court, most claims against officers in police pursuit cases are appropriately defeated for lack of causation.[1] Thus, the step the majority has taken is unnecessary and effectively ignores the established legal scheme that already accomplishes the majority's laudable goals.

Therefore, I would reverse summary judgment on the duty question as an unnecessary change in Missouri law and because the legislature has already spoken plainly on the issue. In section 300.100.4[2] the legislature has stated that authorized emergency vehicles, such as police officers pursuing fleeing suspects, have "the duty to drive with due regard for the safety of *all* persons" which, in plain English and in faithful adherence to the legislature's word choice, includes fleeing suspects. And as far as the other three bases for the trial court's grant of summary judgment – causation, official immunity, and public duty doctrine, which the majority did not reach – I would again apply the full breadth of Missouri law and reverse on those issues as well.

---

[1] *See, e.g., Stanley v. City of Independence*, 995 S.W.2d 485 (Mo. banc 1999); *Dilley v. Valentine*, 401 S.W.3d 544 (Mo. App. E.D. 2013); *Frazier v. City of Kansas*, 467 S.W.3d 327 (Mo. App. W.D. 2015); *Throneberry v. Missouri State Highway Patrol*, 526 S.W.3d 198 (Mo. App. W.D. 2017); *Harris v. City of St. Louis*, 658 S.W.3d 49 (Mo. App. E.D. 2022).
[2] All statutory references are to Revised Statutes of Missouri (2016) unless otherwise stated.

Specifically, in my judgment, causation here is a disputed factual matter for the trier of fact given the competent evidence in the form of witness testimony that the officers' vehicle purposefully made contact with the Neil vehicle shortly before it lost control and struck a tree killing its occupants. As for the official immunity and public duty doctrines, I would also reverse under the particularly troubling facts of this case which in my opinion satisfy at this summary judgment stage the exceptions to those doctrines when the officer's conduct is done willfully wrong, in bad faith, with malice, or with corruption. Simply put, a jury should decide whether the officers' conduct during the chase, including: (1) their deployment of an unauthorized "PIT maneuver"[3] that caused the fleeing suspect to lose control and crash, (2) fleeing the scene without rendering aid, and then (3) lying to their superiors to cover up their involvement, satisfies the foregoing exceptions to official immunity and the public duty doctrine such that these officers should lose the protection provided by those doctrines.

*Duty*

A duty of care may be imposed by statute or ordinance, assumed by contract, or arise pursuant to common law under the circumstances of the case. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976). Section 300.100.4 provides that law enforcement vehicles, even when engaged in an emergency such as "when in the pursuit of an actual or suspected violator of the law," retain the "duty to drive with due regard for the safety of all persons."

---

[3] According to the record, a PIT maneuver, or a "precision intervention technique," occurs when an officer lines up his vehicle parallel with the suspect's vehicle and then makes contact with the rear side of the suspect's vehicle to cause it to spin out. Two officers testified in deposition that PIT maneuvers are unauthorized. An eyewitness testified that he saw the front left side of the police vehicle make contact with the rear right side of the Neil vehicle just before it crashed into the tree.

"The primary objective of statutory interpretation is to ascertain the intent of the legislature and give effect to that intent as it is reflected in the plain language of the statute." *State v. Meyers*, 333 S.W.3d 39, 47 (Mo. App. W.D. 2010). When the statute's language is clear and unambiguous, we give effect to the language as written and do not engage in statutory construction. *Shipman v. DNS Electronic Materials, Inc.*, 267 S.W.3d 751, 758 (Mo. App. E.D. 2008). This Court may look beyond the plain meaning of the statute when it leads to an absurd or illogical result. *Truman Medical Center, Inc. v. Progressive Casualty Insurance Company*, 597 S.W.3d 362, 367 (Mo. App. W.D. 2020).

I disagree with the majority opinion's departure here from these hallowed principles of statutory construction because in my judgment, the plain reading of "all persons," in a statute that mandates that emergency vehicles have a duty to drive with due regard for "all persons," necessarily includes fleeing suspects. The legislature could have readily excluded fleeing suspects from "all persons" but chose not to. Our role is not to change the words or the meaning of the words or add words to what the legislature has chosen. For we may rest assured that the legislature contemplated fleeing suspects when drafting this provision inasmuch as earlier in this section it references "the pursuit of an actual or suspected violator of the law …." Manifestly, this reference not only demonstrates fleeing suspects were on the legislators' collective minds, but that they considered them to be "persons." Likewise, except for when a police officer is engaged in an emergency, the general duty of care that applies to all motorists applies to police officers. Section 304.012.1. And section 300.100 has effectively acknowledged as much by characterizing the "privilege" of an emergency vehicle to violate the traffic laws as an "exemption" from those laws.

4

Moreover, the circumstances involving a passenger in the fleeing suspect's vehicle illustrates the faulty approach the majority has taken. Are we holding that an officer has no duty under *any* circumstances to an innocent child who was left in a vehicle that was then taken by a fleeing suspect? Again, Missouri law holds there is almost never a duty nor liability on the part of the officer by operation of the public duty and official immunity doctrines, respectively. But, no duty with no exceptions is a bridge too far for me.

Finally, the clarity with which the legislature has spoken here likewise undermines any license we might have to declare this patent language an absurdity in order to abandon our duty to abide by the legislature's choice of words and instead reach out to judicial constructs from other jurisdictions.

*Causation*

I would also find that causation is a disputed fact that precludes summary judgment because the competent evidence in this record that the officers made contact with the Neil vehicle causing it to lose control seconds before it collided with a tree distinguishes this case from most of the recent Missouri caselaw addressed below which has rejected causation as a matter of law in police pursuit cases as too speculative.

"The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." *Harris v. City of St. Louis*, 658 S.W.3d 49, 53 (Mo. App. E.D. 2022). Every case is decided on its own facts and proximate cause cannot be based on speculation or conjecture. *Id.*

Rightly, establishing that pursuing police officers' conduct was a proximate cause of any of the consequences that occur in connection with the pursuit of a fleeing suspect should be rare, is rare, and will remain rare under the current caselaw. The cause in most instances is the

5

suspect's decision to flee and then engage in a dangerous and often high-speed flight. *Stanley v. City of Independence*, 995 S.W.2d 485, 488 (Mo. banc 1999) (the suspects made the decision to flee from police, sped through stop lights, and ultimately crashed into decedents and therefore the causal link between the officer's alleged negligence in failing to stop chasing the suspects and the collision was speculative).

Similarly, the court of appeals has followed *Stanley*'s guidance and found proximate cause lacking due to the speculative causal link between the officer's pursuit conduct and the result when the fleeing suspect's vehicle, not the officer's, strikes an innocent bystander. *See, e.g., Dilley v. Valentine*, 401 S.W.3d 544, 549 (Mo. App. E.D. 2013) (proximate cause was speculative where the officer had his lights and siren on, the officer's car was not physically involved in the accident, and the car was over one hundred feet behind the fleeing suspect at the time of the accident); *Frazier v. City of Kansas City*, 467 S.W.3d 327, 337 (Mo. App. W.D. 2017) (the court held causation was speculative given that the factual circumstances were similar to *Stanley* and *Dilley* including that there was no contact between the police vehicle and the suspect's vehicle); *Throneberry v. Missouri State Highway Patrol*, 526 S.W.3d 198, 210 (Mo. App. W.D. 2017) (proximate cause was speculative in that there was no physical contact between the officer and the suspect's vehicle, and the officer's lights and sirens were activated); *Harris*, 658 S.W.3d at 54-55 (finding again that proximate cause was speculative because the officer not only did not make contact with the suspect's vehicle, but he did not even see the collision).

What distinguishes this case from *Stanley* and its progeny is that here there is evidence that the officer's vehicle struck the suspect's vehicle and did so seconds before the pursuit-ending fatal collision with the tree. This evidence establishes a much more obvious and compelling causal link. Moreover, none of the foregoing cases includes anything like the facts

6

here where the officers turned off their lights, fled the scene without rendering aid, and then concealed their involvement.

*Official Immunity and Public Duty Doctrines*

"Official immunity … protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019). "The purpose of the doctrine is to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability. This is because, if an officer is to be put in fear of financial loss at every exercise of his official functions … the interest of the public will inevitably suffer …." *Id.* at 190-91. "Therefore, when a public official asserts the affirmative defense of official immunity, she should be afforded with such immunity so long as she was acting within the scope of her authority *and without malice*." *Id.* at 191 (emphasis added).

Furthermore, "[t]he public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers*, 263 S.W.3d at 611. "[T]he protections of the public duty doctrine are not intended to be limitless, and, just as the doctrine of official immunity will not apply to conduct that is willfully wrong or done with malice and corruption, the public duty doctrine will not apply where defendant public employees act *'in bad faith and malice.'*" *Id.* at 612 (emphasis added).

Thus, these doctrines provide strong and warranted protection for law enforcement engaged in their difficult, selfless, and important tasks done for the benefit of the public at large so long as they do not stray so far from their duties that their conduct is considered malicious, corrupt, willfully wrong, or in bad faith. *Id*. The question in this case is not whether these

7

officers were entitled to these protections, for indeed they were cloaked with these protections when they went on duty that day. Rather, the question is whether their reprehensible conduct should strip them of that cloak.

And just as with regard to the narrow path to prove proximate causation, it is difficult and will remain difficult to fit an officer's conduct during a pursuit of a fleeing suspect into the malice, bad faith or willfully wrong exceptions to official immunity and public duty doctrine. Our caselaw is firm – official immunity shields officers from liability for pursuit-related negligence when there were no facts from which a jury could reasonably infer that the officer acted in bad faith or with malice. *See, e.g., McCormack v. Douglas*, 328 S.W.3d 446, 451 (Mo. App. S.D. 2010) (the volunteer firefighter's conduct by violating firefighter policy as he crossed an intersection amounted to no more than negligence and therefore did not loom towards bad faith or malice); *Throneberry*, 526 S.W.3d at 204 (the court found that none of the facts in the summary judgment pleadings permitted an inference that the officer acted with bad faith or malice); *Carlton v. Means*, --- S.W.3d ---, 2024 WL 330735, at *1 (Mo. App. E.D. 2024) (finding no malice existed because even though the officer sped through a stop sign, he attempted to avoid the collision and testified that he did not intend to injure anyone).

But here, there *is* competent evidence from which the trier of fact could reasonably infer that the officers acted with malice. Instead of stopping to render aid, the officers extinguished their emergency lights and fled the scene of a crash they had arguably caused by improperly employing a PIT maneuver at high speed and then sought to conceal their involvement by lying to their supervisors. On a motion for summary judgment, we must give the benefit of all reasonable inferences to the non-moving party. *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020); *see also Degonia v. Webb City R-VII School District*, 479 S.W.3d 166, 167-68

8

(Mo. App. S.D. 2015) (giving non-movant the benefit of all reasonable inferences on a summary judgment motion means that, if movant requires an inference to establish right to summary judgment, and evidence reasonably supports any inference other than, or in addition to movant's inference, a genuine dispute exists and movant is not entitled to summary judgment; in other words, summary judgment should not be granted unless evidence could not support any reasonable inference for non-movant).

While it is the rare case that warrants submission to the trier of fact whether an officer's conduct was willfully wrong, malicious or done in bad faith so as to strip the officer of his official immunity and public duty doctrine protections, I submit that this is one. And by lopping off duty altogether with no room for exceptions, the majority has bypassed the important function of these doctrines – to protect officers performing their duties for the protection of the public at large *unless* the officers conduct is done in bad faith or with malice. *Southers*, 263 S.W.3d at 612.

_____
James M. Dowd, J.